UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TOMMY EARL JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:12-00636 |
| v. ) | Judge Nixon/Brown |
| ) | |
| MICHAEL J. ASTRUE, COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**To: The Honorable John T. Nixon, Senior United States District Judge**

### REPORT AND RECOMMENDATION

Plaintiff, proceeding *pro se* and *in forma pauperis*, is a prisoner in the West Tennessee State Penitentiary. He brings this action under to 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the final decision of the Social Security Administration ("the SSA"), through its Commissioner ("the Commissioner"), denying plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1381 *et seq*. For the reasons explained herein, the undersigned **RECOMMENDS** that plaintiff's motion for judgment on the record (DE 30) be **DENIED** and the Commissioner's decision **AFFIRMED**.

### I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for SSI on September 4, 2008, alleging a disability onset date of February 1, 2005. (DE 25, pp. 141-47) Plaintiff's application was based on claims that he suffered from intestinal problems, a hole in the intestine wall, Crohn disease, and anemia.[1] (DE 25, pp. 163, 194, 200) Plaintiff's claim was denied on February 2, 2009, and again upon reconsideration on April 30, 2009. (DE 25, pp. 87-93, 95-98)

---

[1] The alleged onset date for Crohn disease and anemia was February 2009.

Plaintiff filed a request for a hearing before an Administrative Law Judge (ALJ) on May 16, 2009 (DE 25, pp. 99-101), with respect to which a video hearing was held on October 21, 2010 before ALJ Donald A. Rising (DE 25, pp. 39-86). Vocational Expert (VE) Julian Nadolsky, Ed.D. testified at the hearing. (DE 25, pp. 76-77, 80-81) The ALJ entered an unfavorable decision on February 2, 2011, holding that plaintiff had not been under a disability as defined in the Act from September 4, 2008 through the date of the decision. (DE 25, pp. 25-34)

Plaintiff through counsel filed a request with the Review Council on March 7, 2011 to review the ALJ's decision. (DE 25, pp. 17-22) The Appeals Council denied plaintiff's request on May 29, 2012 and again on September 24, 2012. (DE 25, pp. 1-12) Thereafter, the ALJ's decision became the final decision of the Commissioner.

Plaintiff brought this action on June 22, 2012 seeking judicial review of the Commissioner's decision. (DE 1) Thereafter, plaintiff filed a motion for judgment on the administrative record on November 16, 2012. (DE 30) The Commissioner responded on February 6, 2013 (DE 35), and plaintiff replied on February 13, 2013 (DE 36). This matter is now properly before the court.

## II. REVIEW OF THE RECORD

### A. Medical Evidence

Plaintiff was treated for abdominal pain at the Greenwood Leflore Hospital (Greenwood) emergency room in Greenwood, Mississippi on October 9,[2] 12, and 16, 2007. (DE 25, pp. 258-86) During his first visit to Greenwood, "[n]o significant abnormality [was] noted" on a CT scan of plaintiff's pelvis, and the laboratory data from his first visit was "[e]ssentially unremarkable," but the "[p]ossibility of C[rohn] disease could not be excluded." (DE 25, pp. 272, 283-86) On October

---

[2] The record shows that plaintiff was treated for stomach and back pains at the C.A. Carmichael Clinic (Carmichael) in Belzoni, Mississippi the day before, on October 8, 2007. (DE 25, pp. 355-58) The Carmichael records are illegible and, therefore, not useful.

2

12, the ER physician diagnosed plaintiff with "[p]ossible chrone's disease." (DE 25, p. 266) Microscopic analysis of a specimen from plaintiff's duodenum[3] on October 16 revealed "[m]ild chronic duodenitis," with respect to which plaintiff was diagnosed with a redundant colon,[4] duodenitis, and gastroesophageal reflux disease.[5] (DE 25, pp. 254-55, 260-62)

Plaintiff was referred by the State of Tennessee to Dr. S. Mark Watson, M.D. for a disability evaluation on December 22, 2008. (DE 25, pp. 289-94) The evaluation was normal in all respects, with Dr. Watson reporting that plaintiff "ha[d] no impairment related physical limitations." (DE 25, pp. 289, 294)

The records show that plaintiff sought medication at Dickson Asthma Lung and Pulmonology/Internal Medicine in Dickson, Tennessee on January 7 and February 4, 2009. (DE 25, pp. 308-14) Apart from a routine physical examination, no tests were performed nor medical conclusions reached regarding plaintiff's condition.

Dr. Jose Rabelo, M.D. completed a physical residual functional capacity (RFC) assessment of plaintiff on January 31, 2009. (DE 25, pp. 295-303) Dr. Rabelo concluded that plaintiff was capable of medium exertion with no postural, manipulative, visual, communicative, or environmental limitations. Dr. Rabelo noted in his comments that, although "Crohn's disease ha[d] been considered in past . . . there [wa]s not enough MER [medical evidence of record] to support this diagnosis," further noting that "[t]he latest abdominal exam in [the] file is pretty benign." (DE 25,

---

[3] Duedenmu – "the first . . . portion of the small intestine . . . ." *Dorland's Illustrated Medical Dictionary* 573 (32nd ed 2012).

[4] Redundant colon – "[A] large intestine (colon) that is longer than normal and as a result has repetitive, overlapping loops." *MayoClinic.com Health Library – Redundant Colon*.

[5] Gastroesophageal reflux disease (GERD) – "[a] chronic digestive disease that occurs when stomach acid or, occasionally, bile flows back (refluxes) into [the] food pipe (esophagus)." *MayoClinic.Com/health/gerd/DS00967*.

3

p. 303)(capitalization in original omitted)

Plaintiff was treated on February 13, 17, 23 and April 6, 2009 at the Centennial Medical Center (Centennial) in Nashville, Tennesse. (DE 25, pp. 320-36) An esophagogastroduodenoscopy[6] performed on February 13 was normal, apart from "mild active gastritis." (DE 25, p. 332) Following a colonoscopy and biopsy on February 17, the attending physician noted, *inter alia*, that the results were "consistent with, but not specifically suggestive of, involvement by Crohn's disease." (DE 25, p. 328) A further medical assessment was made on February 23, the results again "consistent with Crohn's disease." (DE 25, p. 325)

### B. Transcript of the Hearing

#### 1. General

A video hearing was held on October 21, 2010. (DE 25, pp.39-86) Although plaintiff was advised of his right to be represented by an attorney or other representative, he elected to proceed with the hearing without benefit of representation, declining the ALJ's offer to postpone the hearing so he could seek assistance. (DE 25, pp. 28, 41-48) After advising plaintiff of his right to be represented at the hearing, the ALJ discussed the medical records on file at length with plaintiff to determine what, if any, records were missing, and informing plaintiff on the record that the ALJ would take steps to obtain those records that were not in the record. (DE 25, pp. 48-57)

#### 2. Plaintiff's Testimony

Plaintiff testified that he was thirty-two years of age at the time of the hearing, that he was 5 ft. 11 in. tall and weighed one hundred sixty-seven pounds, that he was single but had two children, that his children lived with their mother's parents because both he and their mother were

---

[6] Esophagogastroduodenoscopy – "endoscopic examination of the esophagus, stomach, and duodenum." *Dorland's* at 648.

incarcerated, that he had not graduated from high school, that he was a certified truck driver and fork lift driver, and that he was not presently working on any prison work details. (DE 25, pp. 59-60, 68)

Plaintiff testified next about his prior work history. (DE 25, pp. 60-62) Most of plaintiffs prior jobs were very brief, lasting between one day and one month. The longest job plaintiff testified about was as a forklift operator, which lasted between six and seven months. (DE 25, p. 62)

In discussing his medical problems, plaintiff told the ALJ that he had been diagnosed with Crohn disease. (DE 25, p. 63) According to plaintiff, the Crohn disease caused him to lose one-hundred pounds, he could not eat, and he could not swallow. (DE 25, pp. 63-64) Plaintiff testified further that the pain does not go away, that it caused the left side of his body to become stiff, and that it caused him to be anemic. (DE 25, p. 64)

Plaintiff testified that he had been incarcerated since December 22, 2009, and that he had not taken any medication since that date, although he had taken medication prior to his imprisonment. (DE 25, pp. 64-66) He testified further that he had seen the prison nurse practitioner about his medical complaints only once since his incarceration, and that was approximately two and one-half weeks prior. (DE 25, p. 65) According to plaintiff, the nurse practitioner put him back in contact with a doctor identified only as "my doctor," following which medical action was going to be taken to determine the status of plaintiff's Crohn disease. (DE 25, p. 65)

According to plaintiff, the pain from his Crohn disease was the principal reason he was unable to work. Describing the pain as "crunching," plaintiff testified that the pain caused him to have to stop what he was doing, and that it prevented him from being able to eat or sleep. (DE 25, p. 66) Plaintiff also testified that the medication made him sleepy, which hindered his ability to drive trucks or a fork lift, and that, although some days were not a problem, other days he had to go to the bathroom "five times a day back to back." (DE 25, pp. 66-67)

5

Plaintiff testified that he lived in a trailer with his two children prior to his incarceration. (DE 25, pp. 67-68) He testified that he "struggled" to do household chores because of his physical limitations,[7] that he received no help in doing those chores, that took care of the children while their mother worked, and that he played video games in his spare time. (DE 25, pp. 68, 70) Plaintiff testified that he had been able to drive a car prior to his incarceration, and that he had been able to drive where he needed to go. (DE 25, p. 69)

As for his diet, plaintiff testified that he was supposed to be on a special diet, but had not been since his incarceration. (DE 25, pp. 70-71) Plaintiff also testified that he had not been on a special diet prior to his incarceration, having just begun to learn how to deal with his dietary restrictions the month prior to his imprisonment. (DE 25, p. 71)

Plaintiff testified that none of his prior doctors had given him any work-related restrictions. (DE 25, p. 71) When asked how long he could stand in one spot, plaintiff did not respond. (DE 25, p. 71) When asked how long he could sit, plaintiff replied that he probably could sit for only twenty minutes before having to stand up because of stiffness, and even then he would "have to keep moving, switching from side to side." (DE 25, pp. 71-72) In that regard, plaintiff testified, "I guess I did something to the spine." (DE 25, p. 72) The ALJ asked plaintiff if he had back pain, to which plaintiff responded: "There's pain 24 hours a day . . . the pain is in my lower stomach and . . . my right side . . . [i]t will be up and down my spine . . . [t]hat will get stiff . . . [a]nd on my neck, that would be stiff." (DE 25, p. 72)

The ALJ asked plaintiff whether he exercised in prison. (DE 25, p. 72) Plaintiff testified that

---

[7] The Magistrate Judge notes for the record that, during the time frame plaintiff claims to have "struggled" with household chores, he committed a crime of violence against his next door neighbor on April 16, 2009, following which he was convicted on December 8, 2009 of rape, theft of property over $1,000, aggravated kidnaping, and especially aggravated burglary. *See State v. Jones*, Tenn. Crim. App. No. M2020-00976-CR-258 (Nash. Apr. 19, 2011)(case remanded for a new trial because the trial judge improperly excluded plaintiff from his trial for misconduct).

he did situps and pushups every day, that he had began by doing one hundred of each, and that he was "working [his] way up" from there. (DE 25, p. 73)

In concluding his testimony, plaintiff informed the ALJ that "the Chron's Disease was never on the actual record," but that his doctor "told [him] twice that [he has] a hole working in [his] intestine, and . . . th[e] fluid . . . that's toxic waste . . . seeps out from there into [his] body." (DE 25, pp. 74-75) Plaintiff further testified that his doctor told him that the pain was coming from the lining of his small intestine. (DE 25, p. 75)

### 2. The VE's Testimony

The VE began his testimony by explaining to plaintiff his background, the nature of his work, and his role in the proceedings. (DE 25, p. 76) Thereafter, the VE addressed plaintiff's prior employment as a forklift operator. The VE characterized a forklift operator job as "medium . . . unskilled . . . or low level semiskilled at best." (DE 25, p. 77) Upon further questioning, plaintiff testified that he had worked on a frozen fish processing line, which the VE characterized as a "machine feeder," a medium unskilled position. (DE 25, pp. 77-80) The VE was not asked to address plaintiff's other prior jobs because of their brief duration. (DE 25, p. 77)

The ALJ asked the VE to consider a person of plaintiff's age with a high school education in the context of the forklift and machine feeder jobs. (DE 25, p. 80) The VE testified that both jobs would be available assuming a <u>medium</u> exertional framework with the <u>frequent</u> need to climb, balance, stoop, kneel, crouch, and crawl. (DE 25, pp. 80-81) The VE testified further that both positions also would be available with <u>occasional</u> postural limitations on activities described above. (DE 25, p. 81) The VE concluded that these positions would not be available if abdominal pain prevented the person from sustaining concentration and persistence. (DE 25, p. 81)

Plaintiff asked the VE to consider uncontrollable pain that might cause him to have to let go

7

of the steering wheel of his truck, or that would cause him to lose control of his forklift load. (DE 25, pp. 81-82) The ALJ intervened, explaining that the VE had answered plaintiff's question in the context of his prior concentration and persistence testimony, *i.e.*, that those jobs would not be available. (DE 25, pp. 82-83)

### C. The ALJ's Notice of Decision

The ALJ entered an unfavorable decision on February 2, 2011. (DE 25, pp. 25-34) The ALJ's findings of fact and conclusions of law are summarized below:

> The claimant has not engaged in substantial gainful activity since September 4, 2008, the application date. (20 CFR 416.971 *et seq.).* (DE 25, ¶ 1, p. 30)
>
> The claimant has the following severe impairment: duodenitis (20 CFR 416.920(c)). (DE 25, ¶ 2, p. 30)
>
> The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). (DE 25, ¶ 3, p. 32)
>
> Claimant has the RFC to perform medium work as defined in 20 CFR 416.967(c) but would be limited to frequent climbing, balancing, stooping, kneeling, crouching, and crawling. (DE 25, ¶ 4, p. 32)
>
> The claimant is capable of performing past relevant work as a forklift operator (medium, semi-skilled); and machine feeder (medium, unskilled). This work does not require the performance of work-related activities precluded by the claimant's RFC (20 CFR 416.965). (DE 25, ¶ 5, p. 33)
>
> The claimant has not been under a disability, as defined in the Act, since September 4, 2008, the date the application was filed (20 CFR 416.920(t)). (DE 25, ¶ 6, p. 34)

## III. ANALYSIS

### A. Administrative Proceedings Below

Under the Act, a claimant is entitled to disability benefits if he can show his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505, 416.905. Corresponding regulations outline the five-step sequential process described below to determine whether an individual is "disabled" within the meaning of the Act.

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability.
>
> Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment.
>
> Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1, then he is deemed disabled.
>
> Fourth, the ALJ determines whether, based on the claimant's RFC, the claimant can perform his past relevant work, in which case the claimant is not disabled.
>
> Fifth, the ALJ determines whether, based on the claimant's RFC, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)(internal citations omitted); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). The claimant bears the burden of proof at steps one through four. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The burden then shifts to the Commissioner at step five "to identify a significant number of jobs in the economy that accommodate the claimant's

residual functional capacity (determined at step four) and vocational profile." *Jones v. Comm'r Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

The SSA's burden at the fifth step may be met by relying on the medical-vocational guidelines, known in the practice as "the grids," but only if the claimant is not significantly limited by nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics in the applicable grid rule. *See Wright v. Massanari*, 321 F.3d 611, 615-16 (6th Cir. 2003). In cases where the grids do not direct a conclusion as to the claimant's capacity, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through the testimony of a VE. *See Wright*, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)). In determining the RFC for purpose of the analysis at steps four and five, the SSA is required to consider the combined effect of all the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *see Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988).

### B. Standard of Review

The district court's review of the Commissioner's final decision is limited to determining whether the findings of fact are supported by substantial evidence in the record, and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003); *Key v. Callahan* 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's decision must stand if substantial evidence supports the conclusion reached, even if the evidence also could support a different

conclusion. *His v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). In other words, if the ALJ's findings are supported by substantial evidence based on the Record as a whole, then those findings are conclusive. 42 U.S.C. §§ 405(g), 1383(c); *Key*, 109 F.3d at 273.

### C. Claims of Error

Plaintiff raises a single claim of error: The ALJ erred because he based his unfavorable determination on the Greenwood records, *supra* at pp. 2-3, and Dr. Watson's consultive examination, *supra* at p. 3, without considering the later Centennial records, *supra* at p. 4. Plaintiff provides no supporting factual allegations in support of this claim.

The ALJ wrote the following in his decision with respect to the Centennial medical records at issue:

> The impression from February 2009 small bowel series at Centennial Medical Center was a persistent, irregular long segment of the distal/terminal ileum consistent with Crohn disease, but a biopsy showed ulceration with active inflammatory exudate[8] that was not specifically suggestive of involvement by Crohn disease, noting alternative possibilities of infection, ischemia,[9] or chemical related injury . . . .

(DE 25, p. 31) Because the ALJ did, in fact, consider the Centennial records in his determination, absent additional factual allegations, plaintiff's argument lacks an arguable basis in fact and, as such, is without merit.

Although not pled as such, plaintiff's claim could be liberally construed also to allege that, given the contents of the Centennial records, substantial evidence did not exist on the record to support the ALJ's unfavorable determination in view of those records. Given plaintiff's *pro se*

---

[8] Exudate – "material, such as fluid, cells, or cellular debris, which has escaped from blood vessels and has been deposited in tissues or on tissue surfaces, usually as a result of inflammation." *Dorland's* at 665.

[9] Ischemia – "deficiency of blood in a part, usually due to functional constriction or actual obstruction of a blood vessel." *Dorland's* at 961.

11

status, the Magistrate Judge liberally construes plaintiff's motion to include this closely related claim. *See Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999)(federal courts construe *pro se* pleadings liberally)(citations omitted). The Magistrate Judge assumes for sake of argument that plaintiff had, in fact, been diagnosed with Crohn disease.

The ALJ determined in his decision that plaintiff's medically determinable impairments could be reasonably expected to cause plaintiff's alleged symptoms. (DE 25, p. 32) On the other hand, the ALJ determined that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible given his other statements. (DE 25, pp. 32-33)

"[The] ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones*, 336 F.3d at 475. Moreover, the ALJ's credibility determination is accorded "great weight and deference . . . since the ALJ has the opportunity . . . of observing a witness's demeanor while testifying." *Id*. Still, an ALJ's decision to discount a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviews the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186 (July 2, 1996).

The ALJ made specific note of the following in support of his credibility assessment. First, the ALJ noted there was no evidence in the record that, despite plaintiff's claim to the contrary, any medical professional ever placed any work-related restrictions on plaintiff. (DE 25, p. 33) Second, the ALJ observed that, although plaintiff had not followed a prescribed diet in prison, he had not required any emergency room treatment or hospitalization for pain in the ten months that he had been incarcerated at the time of the hearing. (DE 25, p. 33) Third, the ability to do one hundred pushups

12

and one hundred pullups daily did not "bespeak disabling pain or weakness." (DE 25, p. 33) Fourth, Dr. Watson reported a normal physical examination with "no impairment related physical limitations." (DE 25, p. 33) Concluding that "the record is persuasive that claimant experiences some degree of abdominal discomfort," the ALJ found Dr. Rabelo's RFC assessment to be "reasonable." (DE 25, p. 33)

The ALJ's analysis and subsequent assessment above is fully supported by the medical evidence of record, *supra* at pp. 2-4, and plaintiff's own testimony at the hearing, *supra* at pp. 4-7. Because the ALJ's RFC determination is supported by substantial evidence on the record, this variation on plaintiff's basic claim is without merit as well.

## VI. RECOMMENDATION

For the reasons explained above, the undersigned **RECOMMENDS** that plaintiff's motion for judgment on the record (DE 30) be **DENIED** and the Commissioner's decision **AFFIRMED**

The parties have fourteen (14) days of being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this 21st day of August, 2013.

/s/Joe B. Brown
Joe B. Brown
United States Magistrate Judge